The **COMMUNITY FOR CREATIVE NON–VIOLENCE, et al., Plaintiffs,**

v.

**Donald P. HODEL, et al., Defendants.**

**Civ. A. No. 85–3861.**

United States District Court, District of Columbia.

Dec. 11, 1985.

Charles Morgan, Jr., J. Richard Cohen, David W. Crosland, III, Morgan Associates, Chartered, Washington, D.C., for plaintiffs.

Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence, John D. Bates, Asst. U.S. Attys., Washington, D.C., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

### I.

This is an action for declaratory and injunctive relief brought by the Community for Creative Non-Violence (CCNV) and Mitch Snyder, its primary spokesperson. Defendants are Donald P. Hodel, Secretary of the Interior, and Manus J. Fish, Jr., Regional Director, National Capital Region, of the National Park Service (Park Service).

The controversy in this case stems from the Park Service's denial of CCNV's request to include a statue it commissioned in the 1985 Christmas Pageant of Peace. The Christmas Pageant is an annual "national celebration event" held on the oval portion of the Ellipse during the last weeks of December. 36 C.F.R. § 50.19(d)(1) (1985). It will begin this year on December 12, 1985, at which time the several artifacts of a Christmas celebration will be in place.

The Christmas Pageant is sponsored by the Park Service with the cooperation of The Christmas Pageant of Peace, Inc. The policy of the Park Service is to "encourage[ ] the expression of views regarding [the Pageant]." 46 Fed.Reg. 55,-961. To that end, a public meeting is held several weeks before the Pageant to present a general plan for the event, and to solicit public "suggestions for activities within the theme and format of the Christmas Pageant." *Id.*

*See* Plaintiffs' Exhibit 14. Snyder requested that the sculpture be included as part of the Christmas Pageant. On November 26, 1985, the Park Service informed plaintiffs by letter that that it had "decided to deny [CCNV's] request." The letter went on:

The Christmas Pageant of Peace is a non-partisan, non-political special event held each year on the Ellipse. It is co-sponsored by the National Park Service and Christmas Pageant of Peace, Inc., a non-sectarian, non-partisan civic organization. . . .

The statue that you wish to have displayed along with those items, as described in your remarks in the public meeting, is not appropriate for the Pageant of Peace. It is not a traditional symbol of the Christmas holiday. Further, the statue and accompanying sign represent your group's statement on a political issue now the subject of great controversy. In addition, as pointed out in your remarks at the public meeting and in your recent press release on the statue, the statue will be used to raise monies for a national fund for the homeless. While this goal is admirable, we believe that it is inappropriate to initiate any fund-raising campaign at the Pageant of Peace. Finally, we are concerned about the expense to the National Park Service resulting from the installation of a functional heating grate, an important part of the statue, on the Pageant site. Although you gave us few details on the statue, it appears that considerable replanning would have to be done to accommodate the statue as a part of the Christmas Pageant of Peace display.

Plaintiffs' Exhibit 1–A. The letter concluded:

[Y]ou may set up your statue on the Ellipse in close proximity to the Pageant of Peace under regulations applicable to First Amendment activities on park lands. In this regard, I have enclosed an application for a permit to conduct your activity.

*Id.*[1] Thus, plaintiffs have been invited, in accordance with established regulations, to

---

1. At the December 10, 1985 hearing, government counsel represented that a permit could be issued within 24 hours after plaintiffs filed an application and that an application for, or the

display their statue on the Ellipse in close proximity to the Pageant; the access denied is to the Pageant, itself.

## II.

Plaintiffs' complaint alleges that the government has abridged all of the rights guaranteed them by the First Amendment: the prohibition against the establishment of religion, the right to free exercise of religion, the guarantees of free speech and freedom of the press, the right peaceably to assemble, and the right to petition the government for redress of grievances. Complaint for Declaratory and Injunctive Relief at ¶ 43 (filed Dec. 5, 1985). The complaint also alleges that defendants' actions abridge plaintiffs' right to equal protection, and were arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. § 706. In Plaintiffs' Motion in Support of Application for Temporary Restraining Order and Motion for Preliminary Injunction (filed Dec. 5, 1985), plaintiffs restate all their arguments, but then only brief to any substantial degree the free speech issue. Defendants filed their opposition to plaintiffs' motion at the close of business on December 9, 1985, only substantially briefing in opposition the free speech issue. *See* Memorandum in Support of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment and in Opposition to Plaintiffs' Motion for a Temporary Restraining Order or Preliminary Injunction at 1 n. 1 (filed Dec. 9, 1985). Plaintiffs filed a reply in the morning of December 10, 1985, when a hearing on their application and motion was set for 10:00 A.M. Defense counsel represented that he was served with a copy during the hearing, after he had presented his argument.

Due to the exigencies of the briefing of the temporary restraining order application and preliminary injunction motion, the timing of plaintiffs' reply was understandable.[2] However, in their reply, plaintiffs

present an innovative Establishment Clause argument not developed in their original brief. Before this time, it was not clear how plaintiffs, given the Supreme Court's decision in *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984), planned to address the denial of their request on Establishment Clause grounds. The government has had no opportunity to respond to these recent arguments by plaintiffs and the Court is faced with the situation where emergency relief is required if the statue is to be installed before December 12, 1985. Consequently, the Court will limit the temporary restraining order and preliminary injunction decision to the free speech allegations briefed before the December 10 hearing. Any consideration of other First Amendment issues will be reserved for the plenary proceedings.

## III.

The factors to consider in deciding upon a request for a temporary restraining order or preliminary injunction are: (1) the plaintiff's likelihood of prevailing on the merits; (2) the threat of irreparable injury to the plaintiff in the absence of injunctive relief; (3) the possibility of substantial harm to other interested parties should injunctive relief be granted; and (4) the interests of the public. *Foundation on Economic Trends v. Heckler*, 756 F.2d 143, 151 (D.C. Cir.1985); *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977).

Under the Freedom of Expression Clause of the First Amendment, plaintiffs and defendants are in general agreement as to the legal analysis to apply to this case. Components of the analysis are whether the Christmas Pageant represents a limited public forum or a non-public forum, and whether, under the standards applicable to either type of forum, the government's decision is defensible. The parties agree that

---

granting of, such a permit would not moot the controversy with respect to plaintiffs' claim to placement of their display within the Pageant perimeter.

**2.** *See* Letter from David W. Crosland to Judge Oberdorfer (filed Dec. 11, 1985).

the relevant forum is the Christmas Pageant, and not the entire Ellipse.

### A.

Plaintiffs contend that the Christmas Pageant is a limited public forum. They cite *Perry Education Assoc. v. Perry Local Educators' Assoc.*, 460 U.S. 37, 46 n. 7, 103 S.Ct. 948, 955 n. 7, 74 L.Ed.2d 794 (1983), to say, "A public forum may be created for a limited purpose such as ... for the discussion of certain subjects." *See also North Shore Right to Life Committee v. Manhasset American Legion Post No. 304*, 452 F.Supp. 834, 838–40 (E.D.N.Y. 1978) (Memorial Day parade is limited public forum); *Toward a Gayer Bicentennial Committee v. Rhode Island Bicentennial Foundation*, 417 F.Supp. 632, 639 (D.R.I. 1976) (bicentennial commemoration is limited public forum). Plaintiffs place great emphasis on the public meeting held by the Park Service to solicit public views on the Pageant. They also hark to the special nature of parks as "quintessential public forums." *Perry, supra*, 460 U.S. at 45, 103 S.Ct. at 954.

■ The significance of finding the Pageant to represent a limited public forum is that in order to enforce a content-based exclusion the government must show a compelling state interest which is narrowly drawn to achieve its end. *Id.* at 46, 103 S.Ct. at 955. Plaintiffs argue that the only legitimate issue for decision by the Park Service was whether the statue fits the theme of the Pageant. However, even this issue, they argue, may not be susceptible to decision because the Park Service does not have adequate guidelines for resolution of the issue. *See Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553, 95 S.Ct. 1239, 1243, 43 L.Ed.2d 448 (1975).

Plaintiffs contend that the reasons given by the government for exclusion of the statue do not pass muster under this constitutional analysis. They argue first that none of the criteria were articulated in advance, and second, even if they were, they are not legitimate. As to tradition, they argue that characters as untraditional as the Chipmunks and Yogi Bear have performed at previous ceremonies. Moreover, they argue that the statue *is* traditional in its message—compassion for the homeless—and in its inscription from the biblical Christmas story. They further claim that their message is not political, and even if it is, the Pageant is not apolitical. *See Women Strike for Peace v. Morton*, 472 F.2d 1273, 1291–92 (D.C.Cir.1972) (per curiam) (Wright, J. concurring). They claim that they are not planning to initiate a fund-raising campaign at the Pageant, but only afterwards, and that numerous commercial sponsors are listed in the Pageant programs. *See* Plaintiffs' Exhibits 2–C, 2–D, 2–E. Finally, they claim the grate is to be part of the statue and will not cause excessive effort for the Park Service to install.

Plaintiffs also argue that even if the Pageant is a nonpublic forum, the government action is illegitimate. They argue essentially that, by rejecting the statue, the government is trying to suppress expression of a point of view which is distasteful to the government, and that viewpoint discrimination is prohibited even in a nonpublic forum. *See Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, —— U.S. ——, 105 S.Ct. 3439, 3454, 87 L.Ed.2d 567 (1985).

Beyond the merits, plaintiffs argue that the other prerequisites to injunctive relief are met. First, they argue that any denial of First Amendment rights constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976); *A Quaker Action Group v. Hickel*, 421 F.2d 1111, 1116 (D.C.Cir.1969). Second, they argue that only minimal steps are required by the government to accommodate plaintiffs' statue. And third, plaintiffs claim that the public interest would be served by vindication of First Amendment rights.

### B.

Defendants argue that the Pageant is a nonpublic forum. They rely primarily on *Cornelius, supra*, and *Perry, supra*. They argue that in these cases, the fora

were defined as to the particular means of communication sought rather than by identifying the property at issue as owned by the government. They claim that where the use of the relevant forum is limited and requires the permission of the government, the policy and practice of the government must be examined to ascertain whether the government intended to designate the property in question for public discourse on all or on some limited subjects. *See Cornelius, supra,* 105 S.Ct. at 3449. If permission is not merely routine, then selective access, argues the government, does not create a public forum.

Applying this analysis to the case here, the government argues the the Pageant is unquestionably not a limited public forum. That is, the Pageant is not open to all speakers even on the general subject of Christmas. Defendants argue that the fact that the Park Service holds a public meeting prior to the Pageant does not make the Pageant itself into a public forum. The preliminary meeting may be public, they concede, but even so, the Pageant is not. They distinguish the entertainment portions of the Pageant (which arguably have included non-traditional fare) from the displays which are fixed and thus subject to different regulation by the Park Service. They argue that the government has consistently limited the physical features of the Pageant to traditional Christmas displays.

Defendants further support their argument with a line of cases dealing with the Pageant, itself. Courts have upheld the right of the Park Service to designate the area of the Ellipse for the particular purpose articulated and to keep others (e.g., those who want to conduct a demonstration) out. *Women Strike for Peace, supra; Sanders v. United States,* 518 F.Supp. 728 (D.D.C.1981), *affd. mem.,* 679 F.2d 262 (D.C.Cir.1982).

In a nonpublic forum, distinctions need only be reasonable and viewpoint neutral. *Perry, supra,* 460 U.S. at 46, 103 S.Ct. at 955. Defendants thus agree that even if the Pageant is a nonpublic forum, it cannot be used by the government to discriminate against individuals according to their point of view. *Cornelius, supra,* 105 S.Ct. at 3454. Defendants emphasize that in nonpublic forum analysis, the availability of alternate fora is an important factor in assessing the reasonableness of the government's regulation. *Cornelius, supra,* 105 S.Ct. at 3453; *Perry, supra,* 460 U.S. at 53, 103 S.Ct. at 959. Here, argue defendants, plaintiffs have been offered an opportunity to apply for access to another site at the Ellipse. They also claim that the government can legitimately seek to avoid the appearance of favoring any political points of view in a nonpublic forum. *Cornelius, supra,* 105 S.Ct. at 3453.

Defendants next demonstrate that exclusion of plaintiffs' statue was viewpoint neutral. They argue that plaintiffs' claims of discrimination are mere unsupported speculation. Defendants appeal to a common sense view of the statue, arguing that although the plaintiffs' message may be traditional, the symbol embodied in the statue obviously is not. Defendants argue that the traditional items included in the Pageant are a reindeer, a yule log, a creche, and a number of trees. The statue, they argue, is simply different. They claim that the Park Service's decision is consistent with the law of the Circuit, which allows the Service to "preempt" a portion of the Ellipse, so long as the other part of the park is available for all sorts of public views. *Women Strike for Peace, supra,* 472 F.2d at 1293 (Wright, J., concurring); 1294, 1303–04 (Leventhal, J., concurring); 1304 (Robb, J., concurring). Defendants next go through each basis for rejection and argue that it is reasonable. All that is required, they conclude, is that the government reach a reasonable conclusion that the desired speech is inconsistent with the purpose of the forum. Here, they argue, the proffered statue would damage the "traditional" theme, and politicize and commercialize the Pageant.

Defendants also answer a Fifth Amendment claim raised by plaintiffs. Plaintiffs argue that their contemporary creche can-

not be excluded so long as a traditional creche is in the Pageant. Defendants answer that because there is no First Amendment right to access to the Pageant, there is no denial of a fundamental right. *See Perry, supra,* 460 U.S. at 54, 103 S.Ct. at 959 (citing *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973)). Consequently, the decision to deny access must only have a rational basis, which they claim they have demonstrated.

## IV.

As the parties have indicated, the key to analyzing the merits of this controversy is to determine the type of forum at issue. Here, as the government argues, the recent decisions in *Cornelius, supra,* and *Perry, supra,* are crucial. The parties agree that the relevant forum here is the Pageant itself, not the entire Ellipse. Determination of the type of forum under *Cornelius* and *Perry,* however, requires that the forum be defined narrowly as to the particular means of access sought. 105 S.Ct. at 3449, 460 U.S. at 46–47. At this preliminary stage of factual development, it appears that the Park Service has established different means of access for (1) the permanent displays of Christmas artifacts and (2) the entertainment element of the Pageant, a greater number and variety of individuals and groups being permitted access to the entertainment forum. *See* Plaintiffs' Exhibits 2–C, 2–D, 2–E. Because plaintiffs seek access as a permanent Pageant display (as distinguished from access to the entertainment phase), the forum for displays appears to be the forum to be considered.

Once the scope of the forum is defined, *Cornelius* and *Perry* provide further guidance in determining the nature of the forum. The *Cornelius* case dealt with the Combined Federal Campaign. The Court there found that the government did not intend to open the forum to all charities, but had consistently limited the drive to "appropriate" charities, and had required permission to participate. The Court concentrated its analysis on whether the government intended to create a forum for *expressive* activity, or for some other purpose. The Court undertook a similar analysis in *Perry.*

Here, the facts as they appear at this preliminary stage indicate that the Park Service solicits only suggestions as to possible displays, and has consistently maintained the power to decide what displays are appropriate to the Pageant. Affidavit of Manus J. Fish, Jr. at ¶¶ 10, 11 (filed Dec. 9, 1985). The facts on the record at this time indicate that the Park Service has designated the Pageant as a forum for Christmas displays that it views as "traditional," not a forum for all expression on the subject of Christmas, or for all displays on that subject. Moreover, it appears that the Park Service carefully selects only a few displays and does not routinely accept displays from those who tender them. It thus appears at this stage of the litigation that the forum for Pageant displays is nonpublic.

█ In its nonpublic forum, the Park Service's decision to deny plaintiffs access must be reasonable and viewpoint neutral. *Perry, supra,* 460 U.S. at 46, 103 S.Ct. at 955. As to whether the Park Service has made a reasonable determination that plaintiffs' proffered statue is nontraditional, the decision of the Supreme Court in *Lynch v. Donnelly, supra,* is instructive. The Court there recognized the existence of the Establishment Clause, yet found that certain state sponsorships of displays with "religious implications," 104 S.Ct. at 1363, have become such a part of our tradition that they do not violate this clause of the Constitution. The Court explained its distinction more by example than by principle, and it is thus this distinction by example which must be applied here.

The Supreme Court listed as items "traditionally associated with Christmas":

a Santa Claus house, reindeer pulling Santa's sleigh, candy-striped poles, a Christmas tree, carolers, cutout figures representing such characters as a clown, an elephant, and a teddy bear, hundreds

of colored lights, a large banner that reads 'SEASONS GREETINGS,' and [a] creche ... consist[ing] of the traditional figures, including the Infant Jesus, Mary and Joseph, angels, shepherds, kings, and animals.

104 S.Ct. at 1358. We take this list as the law on what constitute "traditional" Christmas artifacts. The tension between *Lynch* and Supreme Court doctrine which firmly separated government from religion, *compare Lynch, supra,* 104 S.Ct. at 1359, *with Everson v. Board of Educ.,* 330 U.S. 1, 15, 67 S.Ct. 504, 511, 91 L.Ed. 711 (1947), can best be accommodated by treating this list as marking the outer limit of what artifacts are permissible for use in a government-sponsored display celebrating a traditional American Christmas. Moreover, strict construction of the *Lynch* list relieves the Park Service and the judiciary from any need to make impermissible judgments about religious doctrine. *See Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 U.S. 440, 450, 89 S.Ct. 601, 606, 21 L.Ed.2d 658 (1969). Such strict construction also supplies a clear guideline for decision which eliminates concern about the possible ambiguity of the term "traditional."

Under this standard, it appears rational for the Park Service to include a yule log, reindeer, a Christmas tree, and a creche in a traditional straw-based manger in their Pageant while excluding plaintiffs' modern depiction of homeless people over a steam grate. Whether or not plaintiffs' symbol portrays Christmas as traditionally experienced by a number of Americans is not the issue to be addressed in this preliminary injunction. The items deemed acceptable by the Supreme Court in *Lynch* do not include portrayals of contemporaneous experiences in the form proposed by plaintiffs here. Thus, it is not irrational for the Park Service to select as traditional the Pageant items approved by the Supreme Court as traditional in *Lynch.* Nor is it irrational for the Park Service to exclude from the traditional items to be displayed at the Pageant items not specifically approved as traditional by *Lynch.*

The fact that plaintiffs allege that they are simply presenting a different view of Christmas does not establish that the Park Service is illegally trying to suppress plaintiffs' point of view. In a nonpublic forum, the government can make distinctions according to "subject matter and speaker identity." *Perry, supra,* 460 U.S. at 49, 103 S.Ct. at 957. To say that the government cannot engage in viewpoint discrimination means that it may not "suppress expression merely because public officials oppose the speaker's view." *Id.* at 46, 103 S.Ct. at 955. The only evidence of viewpoint discrimination proffered by plaintiffs thus far is the fact that plaintiffs and the government have been in the past, and continue to be now, on opposite sides in the press and in the courtroom on a number of issues. Some of the government's explanations as to plaintiffs' rejection are sufficiently plausible as to preclude a finding at this preliminary stage that plaintiffs are likely to prevail in their contention that the Park Service's decision was pretextual. Moreover, the government's offer of a place for their statue on the Ellipse pursuant to permit demonstrates that the government will allow plaintiffs meaningfully to communicate their message, even if not precisely in their preferred forum.

■ A finding on the likelihood of success on the merits of plaintiffs' Equal Protection claim follows from a finding that the Pageant will likely be found to be a nonpublic forum. Plaintiffs have not thus far demonstrated that they are likely to establish a First Amendment right to access, and as expounded upon above, under current legal precedent the government's explanation for rejection appears reasonable.

In sum, it appears that plaintiffs have not so far demonstrated a substantial likelihood of success on the merits. In light of this finding, it is difficult to say that the balance of harms obviously weighs in favor of granting plaintiffs' requested relief. Plaintiffs have one view of the public interest, and defendants, another. Plaintiffs

have failed to tip the balance sufficiently to warrant preliminary relief. The accompanying Order will deny plaintiffs' application for a temporary restraining order or preliminary injunction, without prejudice, in reliance on the representation in the Park Service's letter to plaintiffs that plaintiffs may set up their statue at the Ellipse "in close proximity to the Pageant of Peace under regulations applicable to First Amendment activities on park lands," Plaintiffs' Exhibit 1–A; and in reliance on government counsel's representation at the December 10, 1985 hearing that a permit application could be processed promptly, and that the application for, or the granting of, such a permit will not moot the controversy with respect to plaintiffs' claim to placement of their display within the Pageant perimeter.