## COMMUNITY FOR CREATIVE NON–VIOLENCE, et al., Appellants,

v.

## Manuel LUJAN, Jr., Secretary of the Interior, et al.

### No. 89–5218.

United States Court of Appeals, District of Columbia Circuit.

Argued May 16, 1990.

Decided July 17, 1990.

---

John Vanderstar, with whom Neil K. Roman, Washington, D.C., was on the brief, for appellants.

John C. Cleary, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

Before RUTH B. GINSBURG, SENTELLE, and THOMAS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge.

This case arises from the denial by the National Park Service ("Park Service") of the request of the Community for Creative Non–Violence and its chief spokesman, the late Mitch Snyder (collectively "CCNV"), to include a sculpture owned by CCNV in the 1988 Christmas Pageant of Peace. CCNV appeals from decisions of the District Court for the District of Columbia denying its motion for a preliminary injunction, granting the Park Service's motion for a protective order and granting summary judgment to the Park Service. CCNV asserts that the Park Service's decision to exclude its statue was arbitrary and capricious; that the District Court wrongly interpreted *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984), in upholding the Park Service; and that it was entitled to depose the Park Service's Regional Director. Although we agree that the Dis-

trict Court incorrectly applied dicta from *Lynch* to this case, the District Court correctly held that the Park Service had not violated the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, and properly declined to compel discovery from the Regional Director. We affirm.

## I. BACKGROUND

Each year since 1954 the National Park Service has held the Christmas Pageant of Peace on the Ellipse, behind the White House. In 1981 the Park Service issued guidelines governing, among other things, the administration of several "National Celebration Events," including the Christmas Pageant of Peace. Demonstrations and Special Events in and Around Washington, D.C., 46 Fed.Reg. 55,959, 55,961–62 (1981) ("Policy Statement"). The Policy Statement lays out the purpose of the Christmas Pageant of Peace:

> The Christmas Pageant of Peace which is held in the oval portion of the Ellipse during approximately the last three weeks in December is presented as a celebration of the holiday season. This event provides the park visitor an opportunity to view the lighting of the National Christmas tree, attend musical presentations and visit the yuletide displays.

*Id.* at 55,962.

The Policy Statement provides that "[p]ersons and groups offering participation in accord with the event's [theme] and format will be permitted to participate in the program subject to reasonable limitations on number of groups or persons who can be accommodated." *Id.* at 55,961–62 (missing word added). The Policy Statement also requires that the Park Service hold a public meeting to present its plans for the event, to obtain the views of the public on these proposals, and to solicit additional suggestions "for activities within the theme and format of the Christmas Pageant." *Id.* at 55,961.

In 1985 CCNV had requested that its statue, alternately titled "Third World America" or "And Still There Is No Room at the Inn," which depicts a life-size homeless family—a man, a woman, and an infant—huddled over a working steam grate, be included in the 1985 Christmas Pageant of Peace. The Park Service refused and CCNV sought a preliminary injunction. The District Court, considering only the allegation that the Park Service had violated the First Amendment's Free Speech Clause, denied CCNV's motion. *CCNV v. Hodel,* 623 F.Supp. 528 (D.D.C.1985), *emergency motion for injunction pending appeal denied,* No. 85–6204 (D.C.Cir. Dec. 23, 1985) (order per curiam).

The Park Service also denied CCNV's 1987 request to enter the statue in the 1987 Christmas Pageant of Peace.

Following an announcement in the Federal Register, 53 Fed.Reg. 28,921 (1988), a public meeting on the 1988 Christmas Pageant of Peace was held on October 6, 1988. Only Jack Benjamin, the hearing officer, and Joseph Riley, President of the Christmas Pageant of Peace, a nonprofit civic organization that cosponsors the Christmas Pageant, attended the meeting. Riley announced that the theme for the 1988 Pageant would be "Legacies." Riley's discussion, actually a monologue, at the public meeting mentioned that "Legacies" included strides made toward world peace and stated that the Christmas Pageant had for thirty years sought to promote the spirit and peace of the Christmas season throughout the year. Transcript of Proceedings Before the National Park Service (Oct. 6, 1988) (Joint Appendix at Tab O). In letters dated October 14, 1988, October 24, 1988, and November 1, 1988, CCNV applied for permission to include its sculpture in the 1988 Christmas Pageant of Peace.

On November 10, 1988, the Park Service declined to accept the sculpture. The letter rejecting the sculpture stated that "[t]he Pageant commemorates the celebration of Christmas as a national holiday through the display of traditional symbols of that holiday." Letter from John G. Parsons, Regional Director, to Mitch Snyder (Nov. 10, 1988) ("November 10 letter"). The letter listed the familiar items customarily included in the Christmas Pageant of Peace: "the National Christmas Tree, the

smaller trees representing the various states, District of Columbia and the territories, a burning yule log, a pen of live reindeer and a traditional creche," *id.*, and then stated that "[t]he statue ... would not complement the National Park Service displays within the Christmas Pageant of Peace." *Id.* The letter further concluded that the statue "does not depict a symbol relating to how Americans have traditionally celebrated the Christmas season." *Id.*

CCNV brought the instant action challenging the exclusion of its statue as unlawful under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). In the course of this litigation, CCNV noticed the deposition of the Park Service's Regional Director. The District Court granted the Park Service's motion for a protective order. The District Court subsequently granted the Park Service's motion for summary judgment and CCNV brought this appeal.

## II. ANALYSIS

### A. *Administrative Procedure Act*

■ CCNV contends that the Park Service's rejection of its sculpture was contrary to the standards set out in the Policy Statement, 46 Fed.Reg. 55,959 (1981), and thus should be set aside as arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). "[W]e must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983) (quoting *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974)).

The Policy Statement provides that persons will be permitted to participate in the Christmas Pageant of Peace if their participation is consistent with the theme and format of the event. The Park Service rejected CCNV's sculpture, stating that it was not a depiction of "a symbol relating to how Americans have traditionally celebrated the Christmas season." November 10 letter. Both CCNV and the Park Service agree that the theme and format of the Pageant is the depiction of traditional American symbols of Christmas, but CCNV contends that the Park Service erred in concluding that its sculpture was not such a depiction.

In its application letters CCNV urged the Park Service that the sculpture was a creche—a modern manifestation of the original Christmas scene—and that the sculpture, by calling on Americans to be conscious of the poor and needy around them, depicted the traditional Christmas message of peace, goodwill, sharing, and giving: "Inasmuch as ye have done it unto [one of] the least of these my brethren, ye have done it unto me." Letter from Mitch Snyder to Sandra A. Alley (Nov. 1, 1988) (quoting Matthew 25:40 (King James Version)).

CCNV's application made two claims: that the sculpture communicated a traditional Christmas message, and that the sculpture was itself a traditional Christmas symbol. The Park Service addressed only whether the sculpture was consistent with the theme and format of the Christmas Pageant. Because the theme and format of the Pageant is the depiction of traditional American symbols of Christmas, the Park Service did not attempt to determine whether the sculpture did or did not depict the meaning of Christmas. Rather the Park Service determined that the sculpture did not depict a traditional American symbol of Christmas. It was unnecessary for the Park Service to evaluate whether CCNV's sculpture depicted the meaning of Christmas because the theme of the Pageant involved traditional symbols, not the messages underlying those symbols.

The Park Service described the traditional symbols depicted in the Pageant as "the National Christmas Tree, the smaller trees representing the various states, District of Columbia and the territories, a burning yule log, a pen of live reindeer and a traditional creche." November 10 letter. This is consistent with the description in the Policy Statement: "This event provides the park visitor an opportunity to view the lighting of the National Christmas tree,

attend musical presentations and visit the yuletide displays." 46 Fed.Reg. 55,959, 55,962 (1981). The copious judicial history of the Pageant makes repeated references to the Park Service's longstanding use of traditional and familiar symbols in the Pageant. *See, e.g., Women Strike for Peace v. Hickel,* 420 F.2d 597, 601–02 (D.C.Cir.1969); *Allen v. Hickel,* 424 F.2d 944, 948–49 (D.C. Cir.1970); *Women Strike for Peace v. Morton,* 472 F.2d 1273, 1293–94 (D.C.Cir.1972); *Allen v. Morton,* 495 F.2d 65, 78–79 (D.C. Cir.1973) (Leventhal, J., concurring). The Park Service determined that CCNV's sculpture was not a traditional symbol. This determination is supported by a comparison of the scene depicted by the sculpture—a contemporary homeless family huddled over a steam grate—with the commonplace Christmas scenes described above.

Moreover, CCNV's own descriptions of the sculpture support this conclusion. CCNV's application letters stated that the sculpture, "a modern manifestation of the original Christmas scene," Letter from Mitch Snyder to Regional Director, National Park Service (Oct. 14, 1988), "is plainly not a traditional depiction of the Christ child ...," Letter from Mitch Snyder to Sandra Alley (Nov. 1, 1988). The Park Service adhered to the theme and format of traditional depictions of familiar Christmas symbols and determined that CCNV's sculpture was not such a familiar symbol, but was a novel and unconventional symbol. The Park Service is the sponsor of the Pageant and is the agency responsible for planning the event and for deciding who may participate. The Administrative Procedure Act does not empower either this Court or the District Court to substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. at 2866. The sculpture may poignantly depict the Christmas message of charity and goodwill toward men in a manner that emphasizes the plight of the neediest in America today. We cannot, however, conclude that the Park Service abused its discretion or acted in an arbitrary and capricious fashion when it determined that, without regard to its message, CCNV's

sculpture was not a customary Christmas symbol that accorded with the theme and format of the Christmas Pageant of Peace.

CCNV also contends that the Park Service did not adequately explain the basis for its decision. The letter rejecting the sculpture indicates that the Park Service supplied a reasoned basis for its action. The Park Service noted its familiarity with the statue, which CCNV had twice before offered for inclusion, and explained that the Christmas Pageant of Peace is a nonpartisan, nonpolitical event. November 10 letter. The Park Service described the displays, which recur every year, and stated that the statue would not complement the displays because the statue does not depict a traditional American Christmas symbol. *Id.* The items previously mentioned—Christmas trees, a yule log, reindeer, and a creche—are all undeniably traditional symbols associated with the American celebration of Christmas and are the items described in the Policy Statement. The statue is, by CCNV's own description and by inspection of the photo supplied by CCNV, modern and not traditional. Thus the Park Service adequately explained its conclusion that CCNV's sculpture failed to accord with the event's theme and format. *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. at 2866.

### B. *Lynch v. Donnelly*

The District Court stated in its decision, *CCNV v. Hodel,* No. 88–3454 (D.D.C. July 7, 1989) (1989 U.S. Dist. LEXIS 8352), granting summary judgment to the Park Service that the Park Service based its decision on the District Court's 1985 decision, *CCNV v. Hodel,* 623 F.Supp. 528 (D.D.C.1985), upholding the Park Service's decision to exclude the statue from the 1985 Christmas Pageant of Peace. There is no indication in the record that the Park Service relied on the 1985, *CCNV v. Hodel* decision. Moreover, such reliance would be misplaced. The 1985 *CCNV v. Hodel* decision stated that the list of Christmas display items in *Lynch v. Donnelly,* 465 U.S. 668, 671, 104 S.Ct. 1355, 1358, 79 L.Ed.2d 604 (1984), reflects "the law on what consti-

tute 'traditional' Christmas artifacts." *CCNV v. Hodel,* 623 F.Supp. at 534. The court explained that "this list ... mark[s] the outer limit of what artifacts are permissible for use in a government-sponsored display celebrating a traditional American Christmas." *Id.*

In *Lynch* the Supreme Court upheld, against an Establishment Clause challenge, a Christmas display sponsored by the city of Pawtucket, Rhode Island, that included a creche. In the factual background section of its opinion the Supreme Court described the Pawtucket Christmas display:

> The Pawtucket display comprises many of the figures and decorations traditionally associated with Christmas, including, among other things, a Santa Claus house, reindeer pulling Santa's sleigh, candy-striped poles, a Christmas tree, carolers, cut-out figures representing such characters as a clown, an elephant, and a teddy bear, hundreds of colored lights, a large banner that reads "SEASONS GREETINGS," and the creche at issue here.

*Lynch,* 465 U.S. at 671, 104 S.Ct. at 1358.

The District Court's conclusion that this list marks the limit of permissible Christmas display items conflicts with the wording and reasoning of the *Lynch* opinion. The Supreme Court's enumeration of these items in *Lynch* was tied to the facts of the Pawtucket display. Had the Pawtucket display included Frosty the Snowman but not included the candy-striped poles, then undoubtedly the list the District Court treated as exclusive would have included snowmen but not candy-canes. Moreover, the display approved in *Lynch* included Christmas miscellany not on the list. *Lynch,* 465 U.S. at 671, 104 S.Ct. at 1358 ("including, *among other things*") (emphasis added).

The District Court's approach in the 1985 case also conflicts with the reasoning of *Lynch. Lynch* stated that "[t]he Establishment Clause like the Due Process Clause is not a precise, detailed provision in a legal code capable of ready application." 465 U.S. at 678, 104 S.Ct. at 1362. In *County of Allegheny v. American Civil Liberties Union,* —— U.S. ——, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989), the Supreme Court upheld the constitutionality of a holiday display sponsored by the city of Pittsburgh, while finding that another display sponsored by Allegheny County violated the Establishment Clause. The Court did so not by looking to see if the items displayed were listed in *Lynch,* but by evaluating the displays in the context of their surroundings. 109 S.Ct. at 3103–3105.

Although we find the District Court's "*Lynch*-list" reasoning, *CCNV v. Hodel,* No. 88–3454, and *CCNV v. Hodel,* 623 F.Supp. 528, to be erroneous, this reasoning is not necessary to the District Court's conclusion. As demonstrated in Section A, *supra,* the Park Service's decision is supportable without reference to the 1985 *CCNV v. Hodel* decision.

## C. *Deposition of Administrative Decisionmaker*

During the course of this litigation, CCNV noticed the deposition of the Park Service's Regional Director, the administrative decisionmaker in this case. The Park Service sought and obtained a protective order.

CCNV asserts that the protective order was inappropriate because *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), allows discovery of the agency decisionmaking process. However, *Overton Park* allows discovery of the agency decisionmaking process only in two circumstances. First is the familiar case in which there has been a strong showing of bad faith or improper behavior. *Id.* at 420, 91 S.Ct. at 825. That is clearly inapplicable here. There is no evidence of such action and CCNV has made no allegation of improper conduct. Second, *Overton Park* states that examination of decisionmakers may be required when such examination provides the only possibility for effective judicial review and when there have been no contemporaneous administrative findings. *Overton Park,* 401 U.S. at 420, 91 S.Ct. at 825. As discussed in Section A, *supra,* the Park Ser-

vice provided an adequate record in this case for effective judicial review.

If the agency's explanation were insufficient, the decision could not stand. If the Park Service had not provided an adequate statement, CCNV might have been entitled to a remand to the agency for further explanation, *Roelofs v. Secretary of the Air Force,* 628 F.2d 594, 601 (D.C.Cir.1980), but it would not have been entitled to depose the agency decisionmaker. Only in the rare case in which the record is so bare as to frustrate effective judicial review will discovery be permitted under the second exception noted in *Overton Park.*[1] *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *Doraiswamy v. Secretary of Labor,* 555 F.2d 832, 842 (D.C. Cir.1976). This is plainly not such a case.

CCNV contends that the Park Service's motion for summary judgment was not based on the administrative record, but solely on the Regional Director's litigation affidavit. The use of an affidavit by the agency decisionmaker was manifestly inappropriate for a case alleging only violations of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* The affidavit in this case added nothing—it either duplicated the record and was thus unnecessary or it added to the record and was thus beyond the record and of no use to the Court's consideration of the APA claims, which must be based on the record, even in review of an informal proceeding such as this. "[J]udicial review of administrative action should normally be based on the 'full administrative record' that was before a decisionmaker at the time challenged action was taken and not on a *de novo* review of the facts in the District Court." *Cooperative Services, Inc. v. HUD,* 562 F.2d 1292, 1295 (D.C.Cir.1977); *Camp,* 411 U.S. at 141–42, 93 S.Ct. at 1243–44 (1973). *Overton Park* stated that litigation affidavits traditionally have been found to be an inadequate basis for the review required under APA § 706(2)(A). 401 U.S. at 419, 91 S.Ct. at 825. *See also Burlington Truck Lines v. United States,* 371 U.S. 156, 167, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962); *SEC v. Chenery Corp.,* 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). The affidavits in this case cannot be considered an adequate basis for review. The District Court did not treat them as such and neither do we. As discussed above, the Park Service adequately justified its decision in the record materials. Thus the Park Service's submission of litigation affidavits does not justify allowing a deposition to be taken from the Regional Director.

### III. Conclusion

For the reasons stated above, the decisions of the District Court denying a preliminary injunction, granting a protective order to the Regional Director, and granting summary judgment to the Park Service are

*Affirmed.*

---

**1.** "Of course, such inquiry into the mental processes of administrative decisionmakers is usually to be avoided." *Overton Park,* 401 U.S. at 420, 91 S.Ct. at 825 (citing *United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941)).