**PUBLIC CITIZEN, et al., Plaintiffs,**

v.

**Margaret HECKLER, Defendant.**

**Civ. A. No. 85–1395.**

United States District Court, District of Columbia.

Dec. 31, 1986.

Amended Judgment Feb. 10, 1987.

Amended Order March 11, 1987.

Eric R. Glitzestein, William B. Schultz, Alan B. Morrison, Public Citizen Litigation Group, Washington, D.C., for plaintiffs.

Jacqueline H. Eagle, Office of Consumer Litigation, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

The plaintiffs in this case are Public Citizen, a non-profit public interest organization whose objectives include improving the public health; Sidney M. Wolfe, M.D., Director of Public Citizen Health Research Group; the American Public Health Association, a nonprofit public health professional society; and George J. Drabble, a resident of California, where most raw milk is produced and consumed. Plaintiffs challenge as arbitrary, capricious, and not in accordance with law, the denial by the Secretary of Health and Human Services ("HHS" or "the Secretary") of Public Citizen's citizen petition for the issuance of a rule banning the sale of unpasteurized milk [1] in the United States. Plaintiffs also challenge the Secretary's failure to terminate a 1974 stay of a 1973 Food and Drug Administration ("FDA") regulation that revised the existing standards of identity for milk and milk products moving in interstate commerce, and in effect prohibited the sale of all unpasteurized milk in interstate commerce. 38 Fed.Reg. 27924 (Oct. 10, 1973, stayed in 39 Fed.Reg. 42351 (Dec. 5, 1974)). On December 5, 1974, the regulation was stayed as to the sale of only certified raw milk [2] pending a public hearing on the safety of

1. Unpasteurized milk is commonly referred to and marketed as "raw milk".

2. "Certified raw milk" is unpasteurized milk produced by methods which comport with the standards established by the American Associa-

tion of Medical Milk Commissions, a private trade organization whose primary member is the Alta-Dena Dairy, one of the two major producers of certified raw milk in the country.

certified raw milk which was to be held by the FDA. Although evidence adduced at that hearing conclusively shows, and the Secretary now concedes, that the consumption of certified raw milk presents a serious risk to human health, the 1974 stay has not been lifted.

Plaintiffs request this Court to compel HHS to (1) complete the thirteen year old pending rulemaking proceeding to require that *all* milk and milk products sold in interstate commerce be pasteurized; and (2) initiate a new rulemaking proceeding banning both interstate and intrastate sales of raw milk. The case is currently before this Court on the parties' cross-motions for summary judgment.

After careful consideration of the cross-motions for summary judgment, the pleadings, supporting and opposing memoranda, and the entire administrative record, this Court concludes that partial summary judgment must be entered for HHS on the issue of HHS's failure to terminate the 1974 stay of its 1973 pasteurization requirement, and partial summary judgment must be entered for plaintiffs on the issue of HHS's denial of Public Citizen's petition for new rulemaking.

## BACKGROUND

On October 10, 1973, in a standard of identity proceeding, the Food and Drug Administration adopted a regulation pursuant to section 401 of the Food, Drug and Cosmetic Act, 21 U.S.C. § 341 (1982), that required that all products labeled "milk" moving in interstate commerce be pasteurized. 38 Fed.Reg. 27924 (October 10, 1973). The Association of Medical Milk Commissions, Inc., the Certified Milk Producers Association of America, Inc., and two of the three dairies that produce certified raw milk formally objected to the regulation. They asserted that certified raw milk (as opposed to uncertified raw milk or raw milk) was a safe product, and that section

401 of the Federal Food, Drug and Cosmetic Act did not give the Commissioner authority to establish a standard of identity solely for health reasons.

In response to this objection, the FDA ruled that because substantial issues of fact existed with regard to the safety of certified raw milk, the 1973 requirement would be stayed pending a public hearing on the matter. 39 Fed.Reg. 42351 (December 5, 1984). The pasteurization regulation remained in effect with regard to non-certified raw milk. In the stay order, the FDA Commissioner noted that section 361 of the Public Health Service Act, 42 U.S.C. 264 (1982), as well as section 401 of the Federal Food, Drug, and Cosmetic Act, authorizes the FDA to enact a pasteurization requirement. The Commissioner also stated that "if certified raw milk is found to contain harmful bacteria or to be in violation of other provisions of the Federal Food, Drug and Cosmetic Act, appropriate action will be taken." *Id.*

From 1974 to 1982 the FDA collected and evaluated scientific and medical information to determine if the outbreak of certain diseases was associated with the consumption of certified raw milk. The FDA worked closely with the Center for Disease Control ("CDC"), a branch of HHS, and encouraged the states to test milk and milk products for bacteria or microorganisms and to report outbreaks of milk-borne disease to the CDC.

The process of collecting and reviewing data and information led the FDA to conclude that the consumption of certified raw milk and all forms of raw milk and raw milk products was linked to the outbreak of serious disease.[3] In 1982, the FDA began drafting a proposed regulation banning the interstate sale of all raw milk and raw milk products.

On April 23, 1983, then-FDA Commissioner Arthur Hull Hayes sent a memoran-

---

**3.** In particular, as documented by the Center for Disease Control, there has been a number of outbreaks of two serious bacterial diseases, campylobacteriosis and salmonellosis, which on rare occasions result in death. The link be-

tween raw milk and Salmonella Dublin Bacterium ("S. Dublin") was particularly strong, and the especially virulent S. Dublin often invades sites outside the intestine such as the lung and spinal fluid.

dum to the Secretary requesting her approval of the proposed rule. Plaintiffs' Exhibit H. Rather than hold the evidentiary hearing which the FDA announced in its stay order of 1974, however, Commissioner Hayes proposed that new regulations be issued under the Public Health Service Act which "would provide a more uniform and efficient regulatory mechanism than a standard of identity proceeding, to assure public health protection." *Id.*

The FDA's proposal received widespread support from others within HHS. For example, in a February 1984 memorandum, HHS's Assistant Secretary for Health Edward Brandt, Jr., presented "further compelling evidence on the association of S. Dublin salmonella and the consumption of raw milk." Plaintiffs' Exhibit I. Likewise, in May 1983, the Director of the Center for Disease Control stated that "because the accumulated evidence indicates that unpasteurized [raw] milk is inherently unsafe, the Center for Disease Control supports pasteurization of milk and other dairy products." Plaintiffs' Exhibit J. The Director of CDC further indicated that CDC can conceive of no practical way raw milk can assuredly be safely marketed." *Id.*

In a February 1984 memorandum, the Chief of the Bureau of Foods Epidemiology and Clinical Toxicology Division provided emphatic statistical support for the FDA's proposed regulation. Following a review of data provided by the California Department of Health Services, the memorandum concluded that an individual who consumed certified raw milk produced by the Alta-Dena dairy was 51 times more likely to be infected with S. Dublin than an individual who consumed pasteurized milk. Plaintiffs' Exhibit K.

Public Citizen filed a citizens petition with the FDA on April 10, 1984, requesting a ban on all domestic sales of raw milk and raw milk products. Plaintiffs' Exhibit L. The Secretary did not rule on the merits of the petition and by letter to Dr. Sidney Wolfe of Public Citizen, she stated that the matter "is under active consideration." No schedule for reaching a conclusion was given, but the Secretary indicated she would hold a public hearing on the matter. Plaintiffs' Exhibit M.

In a second letter to Dr. Wolfe, the Secretary indicated that the certified raw milk issue "has been periodically reviewed within the Department for many years without definitive resolution." *Id.* Again, she refused to indicate when a resolution might be made. Plaintiffs filed suit in the District Court for the District of Columbia on September 19, 1984, to compel the Secretary to respond to the petition for a ban on raw milk sales in a timely fashion. *Public Citizen v. Heckler*, 602 F.Supp. 611 (D.D.C. 1985).

In accordance with the Secretary's first letter to Dr. Wolfe, on October 11 and 12, 1984, an informal hearing was held by HHS on two issues: (1) whether the consumption of raw milk is a public health concern; and (2) if so, whether requiring pasteurization of all raw milk is the most reasonable regulatory option. The notice of hearing published in the Federal Register stressed that the purpose of the hearing was to develop an administrative record upon which agency action would be based. 49 Fed.Reg. 31066 (August 3, 1984).

The Secretary did not suggest in the notice that there was any question of who, as between the federal government and the individual states, should regulate raw milk. No public comment was solicited on that issue. Over 25 state and local public health departments submitted comments to the FDA supporting a federal ban on raw milk sales. Not a single state or local government agency contended either that raw milk was not a significant public health problem or that pasteurization was not the proper regulatory approach to the danger posed by raw milk. In fact, the National Conference on Interstate Milk Shipments, whose members consist of the milk regulatory agencies of the 50 states, had adopted an ordinance calling for the pasteurization of all Grade A milk and milk products.

The October hearing resulted in a 330 page transcript and well over 300 comments totalling approximately 4000 pages.

Those testifying against any Federal regulation of certified raw milk and certified raw milk products pointed out that many other foods (for example, raw meat) against which no Federal action was contemplated, are also sources of exposure to harmful microorganisms. It was made clear, however, that those other unregulated food products are normally cooked before consumption, and the cooking process kills the salmonella bacteria.

Comments opposing a pasteurization requirement included several witnesses' testimony that in the absence of a definitive case-control study, there was no way to determine whether the apparent association between drinking raw milk and being infected by harmful microorganisms was causal and encouraged HHS to sponsor such a study. Other proponents of raw milk testified that raw milk offers nutritional benefits that are destroyed by pasteurization and that raw milk tastes better than pasteurized milk.

The American Academy of Pediatrics, the National Association of State Departments of Agriculture, the Association of State and Territorial Health Officials, the United States Conference of Local Officials, the National Conference for Food Protection, the American Veterinarians Medical Association, the National Milk Producers Associations, the National Conference on Interstate Milk Shipments, the Association of Food and Drug Officials, the National Dairy Counsel, the American Society for Microbiology, the Milk Industry Foundation, the Mid-American Dairymen's Association, and others, all supported the pasteurization requirement. These witnesses argued that the risks associated with the consumption of raw milk, even certified raw milk, heavily outweigh any benefits from its consumption.

Some witnesses suggested that labeling would be an appropriate alternative to a ban. Others stated that because raw milk is often consumed by the very young, the elderly and the infirm, labeling would not adequately protect them from the inherent risk associated with the product.

No organization or individual commented or testified at the FDA hearing that the states are in a better position to respond to the problems posed by raw milk consumption than is the federal government.[4] Evidence in the record of the inability of certain states to overcome the resistance of the certified raw milk producers and deal with the problem at the state level suggests just the opposite. The record shows that the individual states in fact favored federal regulation.

No individual or organization commented or testified that because of the relatively small percentage of interstate sales of raw milk in comparison to intrastate sales the FDA should be prevented from banning interstate sales of raw milk. The evidence did indicate that even if the incidence of raw milk consumption resulting from interstate sales were low, the risk of contracting a serious illness as a result of that consumption remained high.

No participant in the hearing suggested that the Secretary lacked the necessary statutory authority to ban raw milk sales in the United States. That assertion was raised for the first time in HHS's litigation memoranda. In its denial letter, HHS stated that on the facts known it did not have statutory authority to impose an *intrastate* ban. There was no assertion made by the Secretary in her denial letter that HHS lacked authority to ban intrastate sales if it became necessary to effectuate an interstate ban, or that HHS lacked authority to ban interstate sales.

On January 14, 1985, in *Public Citizen v. Heckler,* 602 F.Supp. 611 (D.C.C.1985), Judge Gesell ruled that the Secretary had unreasonably delayed in responding to plaintiffs' petition in view of the fact that "officials at the highest levels of the De-

4. The American Academy of Pediatrics was permitted to submit an amicus brief in support of the plaintiffs' position. In that brief they cite an instance of the failure of state regulation in which the Mathis Dairy in Decatur, Georgia, attempted to sell raw milk in Florida, where raw milk sales are illegal, by labelling the raw milk as "cat food".

partment of Health and Human Services have concluded that certified raw milk poses a serious threat to the public health ..." and that the Secretary's justifications for delay were "lame at best and irresponsible at worst." *Id.* at 613.

Judge Gesell rejected the Secretary's contention that the relatively small sales of interstate raw milk justified the delay in responding to plaintiffs' petition. The court stated that the percentage of interstate sales are "meaningless if the risk per sale is high, as the Department's own statistics indicate." *Id.* The court recognized that HHS "has both the authority and the heavy responsibility to act to protect the nation's health in situations such as this one." *Id.* [5]

On January 29, 1985, the FDA again urged the Secretary to "require the pasteurization of all milk and milk products moving in interstate commerce" because such a requirement "is supported by the administrative record compiled as a result of the [October 1984] hearing." Plaintiffs' Exhibit N at 2. The FDA transmitted to the Secretary a proposed rule banning interstate sales of raw milk and supported this proposed rule by stating that "there is a strong association between the consumption of certified raw milk and the outbreak of disease." FDA Proposal to Require Pasteurization of All Milk and Milk Products Sold for Human Consumption in Interstate Commerce (Docket No. 81N–0204C), Plaintiffs' Exhibit O.

The Secretary rejected the FDA's recommendation and directed the FDA to deny Public Citizen's petition in its entirety. By letter dated March 15, 1985, the Commissioner of the FDA denied the petition, stating that the agency would not ban either interstate or intrastate sales of raw milk. The letter acknowledged that "raw milk, including certified raw milk, is a vehicle for the transmission and spread of numerous diseases" and there is no "scientifically

confirmed benefit established for the consumption of raw milk, including certified raw milk."

The FDA concluded that "a federal ban would not be the most effective or appropriate means of dealing with the health problems posed by unpasteurized milk and milk products, based on the following considerations:

(1) most unpasteurized milk and milk products are marketed exclusively in intrastate commerce;

(2) most illnesses associated with unpasteurized milk and milk products are caused by such products marketed in intrastate commerce;

(3) there is no reason to believe that unpasteurized milk marketed in interstate commerce represents a greater source of risk than unpasteurized milk marketed intrastate;

(4) the Department does not have adequate legal authority, based on the facts available at this time, to prohibit the intrastate marketing of unpasteurized milk and milk products;

(5) even assuming that it did have such authority, the problems created by unpasteurized milk and milk products are most appropriately dealt with at the state and local level; and

(6) banning certified raw milk from interstate commerce would, because interstate sales of that product constitute a very small proportion of all raw milk sales, have a minimal effect on the public health problem attributable to unpasteurized milk." FDA Denial Letter of March 15, 1985, Plaintiffs' Exhibit M.

The FDA denial letter did not cite any documentary evidence from the record to support the statement that the problem of raw milk is most appropriately dealt with at the state and local level. Nor did the FDA cite any authority for the proposition

**5.** The statutory source of HHS's authority was found by the court to have been granted by both the Public Health Service Act's authorization of regulations to control communicable diseases, 42 U.S.C. § 264 (1982), and the Food, Drug and

Cosmetic Act's provisions for the control of adulterated foods, 21 U.S.C. § 342 (1982), as Commissioner Hayes noted in the 1974 Stay Order.

that the FDA does not have adequate legal authority to prohibit intrastate marketing of unpasteurized milk and milk products. No further articulation of the rationale for the Secretary's decision was offered.

*Analysis*

### I. Reviewability of the Agency's Action

█ Judicial review of agency action is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. 701–706 (1982). The standards of review set out in those sections apply to all agency action "except to the extent that (1) statutes preclude judicial review, or (2) agency action is committed to agency discretion by law." APA § 701(a). Relying on *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the Government raises a threshold challenge to plaintiffs' claim that the Secretary's denial of plaintiffs' petition violates the APA.

█ The Government argues that the Secretary's decision is precluded from review under APA § 701(a)(2). The *Chaney* Court, however, expressly stated that its holding does not "involve the question of agency discretion not to invoke rulemaking proceedings." *Chaney*, at 1652 n. 2.

Furthermore, in *Robbins v. Reagan*, 780 F.2d 37 (D.C.Cir.1985), the court indicated that "the 'committed to agency discretion' provision is a 'very narrow exception'", *Robbins*, at 44–45 (citations omitted), to the general rule that agency action is presumptively reviewable. The holding of *Chaney* is "applicable in decisions not to take enforcement action [and] must not be applied outside of that context." *Id.*

From the normal presumption that agency action is reviewable, the *Chaney* Court shifted to a presumption of non-reviewability on facts such as those present in *Chaney*. The reason for the shift in the presumption of reviewability is not present in the case at bar. In *Chaney*, the FDA decided not to take enforcement action against a particular party. The lack of clear statutory guidelines as to how an agency should exercise its enforcement discretion on an individual basis makes it

"reasonable to require some extra degree of substantive guidance to give the court a focus and basis for its review." *Robbins*, at 43.

Here the action at issue is not an individual enforcement action, but an agency's refusal to engage in rulemaking. Unlike the enforcement situation, there are clear statutory mandates set forth in both the Food, Drug and Cosmetic Act and the Public Health Act to guide this Court in determining whether the agency abused its discretion. Accordingly, the action of HHS must be examined in light of those statutory mandates and according to the standard of review provided by the APA.

### II. What Constitutes the Administrative Record

█ The APA requires that the reviewing court "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." APA § 706(2). In determining if an agency's decision is valid, it is necessary for the court to review the administrative record which the agency relied on as the basis for its decision.

The parties in this case dispute what properly constitutes the administrative record. "If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision." *Walter O. Boswell Memorial Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C.Cir.1984); *accord Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971) (Review to be based on full administrative record before Secretary at the time he made his decision.) The reason for this is simple. "To review less than the full administrative record might allow a party to withhold evidence unfavorable to its case, and so the APA requires review of the 'whole record'." *Boswell*, at 792. Therefore it is necessary for this Court to determine what is to be included in the administrative record under review.

Plaintiffs have submitted as exhibits to their briefs, documents consisting of, *inter alia,* memoranda prepared by various FDA and CDC officials, as well a draft of a proposed FDA regulation banning the interstate sale of all raw milk.[6] Plaintiffs cite these documents to support their position that the agency abused its discretion in denying Public Citizen's petition. The documents show, for example, that there was strong support from the highest levels of the FDA for the issuance of the proposed regulation, and that both the FDA and the CDC, within whose particular area of expertise such matters lie, found all types of raw milk unsafe for human consumption and recommended that it be banned.

▋ HHS makes a blanket objection to all of plaintiffs' exhibits on the basis that they are not part of the "administrative record" and therefore should not be considered. It is unclear, however, precisely which of the various exhibits HHS objects to, or on what grounds it objects. Many of the items included in plaintiffs' attachment, such as "Plaintiffs' Petition", (Plaintiffs' Exhibit L), are clearly unobjectionable and are included in the very administrative record filed by the HHS in this case.[7]

The Court assumes that it is the documents entitled "memoranda" prepared by various agency and departmental health officials, to which HHS objects, on the basis that they are internal agency memoranda. HHS relies on *San Luis Obispo Mothers for Peace v. NRC,* 751 F.2d 1287, 1227 (D.C.Cir.1984) *aff'd* 760 F.2d 1320 (1985) (en banc), for the proposition that "judges review administrative action on the basis of the agency's stated rationale and findings, and the court's correlative reluctance to supplement the record, is well established." Defendant's Reply to Plaintiffs' Motion for Summary Judgment at 3. While that may be true as a general proposition, certain exceptions have been recognized in the very case on which defendant relies. "[S]upplementation [of the record] might be required if petitioners made a prima

facie showing that the agency excluded from the record evidence adverse to its position or that the agency's stated rationale is but a pretext masking the true basis of its decision." *San Luis Obispo,* at 1227.

Public Citizen has made that prima facie showing in this case. The documents HHS wishes to exclude from the administrative record were known to HHS at the time of their decisionmaking, are directly related to the decision made, and are adverse to the agency's position. These documents are indicative of a lack of rationality on the part of HHS in the decisionmaking process. For an agency to say one thing—that all raw milk is a known public health risk, and do another—refuse to ban all types of raw milk, is the essence of arbitrary action. *New England Coalition on Nuclear Pollution v. NRC,* 727 F.2d 1127 (D.C.Cir. 1984). It indicates that the Secretary's stated reason may very well be pretextual.

▋ The only document to which HHS directly addresses an objection, is the draft of the FDA's proposed regulation which bans the sale of raw milk. (Plaintiffs' Exhibit O). That document is marked with the docket number given to all materials in the FDA file, pursuant to federal regulation, concerning the issue of the promulgation of raw milk regulations. As such, it has properly been made a part of the administrative file. It is not a deliberative document of agency personnel. There is no basis for its exclusion from the record.

▋ Moreover, this Court is free to include in its review the challenged document to ascertain whether the Secretary considered all of the relevant factors she should appropriately have considered in reaching her decision. If the FDA proposal were excluded from the record on the ground that the Secretary did not rely on it in making her decision, the Secretary would have abused her discretion by failing to consider vitally important information

---

6. *See* Plaintiffs' Exhibits H, I, K, N, and O.

7. *See also* Plaintiffs' Exhibits A, B, C, E, J, L, M, P, Q, R, S, T, U, AA, and BB.

offered by the agency's own experts in the field.

Even if this Court were to exclude certain or all of the documents at issue on the basis that they might be considered internal agency memoranda, review of the remaining portions of the 'administrative record' would lead to the same conclusion on the merits of this case. The edited record proffered by HHS is replete with credible evidence of the danger of raw milk consumption, and the support of various organizations, both within and without the Government, for a federally imposed interstate ban. On the other hand, there is a noticeable lack of evidence in the record to allow us to say that the Secretary's refusal to institute a pasteurization requirement, on the basis that regulation is more appropriate at the state level, was rationally related to the facts found by the agency. For the reasons discussed below, and in light of the administrative record, the denial of Public Citizen's petition and HHS's refusal to promulgate rules banning the interstate sale of raw milk was arbitrary and capricious.

### III. The Secretary's Action under the Arbitrary and Capricious Test

Prior to a more detailed explanation of the review of the Secretary's decision, this Court must first address the unusual procedural posture of this case. HHS has actually taken two separate "actions" with regard to raw milk. First, the Secretary failed to lift the 1974 stay of the 1973 standard of identity requirements as they apply to certified raw milk even though overwhelming evidence of the risks associated with the consumption of raw milk, both certified and non-certified, has been presented.[8] Second, the Secretary denied Public Citizen's 1984 petition requesting HHS to promulgate a new regulation banning all raw milk sales.

Public Citizen never directly petitioned HHS to lift the 1974 stay. Plaintiffs challenge HHS's failure to do so in Count I of their complaint, claiming that HHS effectively rescinded its 1974 pasteurization requirement without providing the public with notice and an opportunity to comment as required by the APA. Plaintiffs further argue that the denial of their petition constitutes a *de facto* recission of the stayed standard of identity regulation. In plaintiffs' prayer for relief, this Court is requested to reinstate the 1974 pasteurization requirement as well as to direct HHS to initiate new rulemaking regarding both interstate and intrastate sales of raw milk, together with any other further relief the court finds proper.

 HHS contends that there is no basis for judicial relief with regard to the 1974 stay, where plaintiffs' initial challenge is made in this court proceeding. Since Public Citizen did not petition HHS to reconsider the 1974 stay, technically, plaintiffs have not exhausted their administrative remedies.[9] As a result, Public Citizen's request with regard to the 1974 stay is not properly before the court and it may not be ruled on directly.[10]

 We turn, therefore, to the Secretary's second action, the denial of Public Citizen's petition asking HHS to engage in rulemaking, and we first consider the ap-

---

8. Although that stay was initiated pending a public hearing on the safety of certified raw milk, no hearing was held until 12 years later, after Public Citizen's petition for new regulations was filed with HHS, and Judge Gesell ordered HHS to rule on the petition and proceed expeditiously to complete any ensuing rulemaking.

9. There is a recognized judicial exception to the exhaustion requirement when it can be shown that exhaustion would be futile. In light of the relief this Court grants Public Citizen on the basis of their properly presented challenge made in Count II, and the substantive similarity of the relief which is asked for, it is unnecessary to consider plaintiff's alternate challenge made in Count I, even though the exception might apply on these facts.

10. Although procedurally HHS's actions must be viewed as discreet events, the substantive merits of each are inextricably intertwined. Our review of the denial of plaintiff's petition necessarily mandates that this Court examine the record and the Secretary's actions within the context of the related proceeding events.

propriate scope of review. Notice and comment rulemaking conducted pursuant to section 553 of the APA is unlawful if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." APA § 706(2)(A). This review is focused and restricted, and it does not permit the court to substitute its judgment for that of the agency. *Citizens to Preserve Overton Park*, 401 U.S. at 416, 91 S.Ct. at 823. "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made'." *Motor Vehicles Manufacturers Ass'n v. State Farm Mutual*, 463 U.S. 29, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (citation omitted).

In this case, however, the agency decided after years of inquiry and lengthy proceedings, *not* to engage in rulemaking. The Secretary argues that the standard of review to be applied to denials of petitions for rulemaking is even narrower than that applied to review of the promulgation of a rule. "The law in this Circuit makes clear that the scope of review ... of an agency decision to deny a rulemaking petition is *very narrow*. Such review is limited to ensuring that the agency has adequately explained the facts and policy concerns it relied on, and that the facts have some basis in the record." *Arkansas Power & Light Co. v. I.C.C.*, 725 F.2d 716, 723 (D.C. Cir.1984); *see also New England Coalition on Nuclear Pollution.* It is this more deferential standard of review HHS would have this Court adopt.

A heightened degree of deference by the reviewing court is derived from policy considerations concerning the competence of the judiciary to 'second guess' a discretionary determination made by the agency charged with particular expertise in an area. The judiciary's expertise lies in statutory interpretation of Congress' mandate as expressed in statutes which give administrative agencies their authority to take certain types of action. When a court is acting in this capacity, the reasons for judicial deference are diminished. Alternative-

ly, "[a]n agency's discretionary decision *not* to regulate a given activity is inevitably based, in large measure, on factors not inherently susceptible to judicial resolution—*e.g.*, internal management considerations as to budget and personnel; evaluations of its own competence; weighing of competing policies within a broad statutory framework." *NRDC v. SEC*, 606 F.2d 1031 (D.C.Cir.1979). In these types of cases judicial deference is appropriate.

These reasons for judicial deference to an agency's decision not to act, however, are not present in the case at bar. The Secretary's decision to refuse to regulate the sale of certified raw milk does not appear to be based on internal management considerations as to budget and personnel. Here, the sale of uncertified raw milk has already been regulated by the FDA. No evidence has been presented which shows that to additionally require the regulation of certified raw milk, contrary to the Secretary's bare assertion that resources will be diverted from truly national problems, will impose a significant burden on the agency's budget or personnel. In fact, the major expenditure of agency resources has already been incurred. No further investigation or hearings need be held, and no additional administrative record need be compiled as these events have already occurred. Accordingly, the incremental increase in expenditures HHS will incur, in order to regulate certified raw milk in addition to uncertified raw milk, is very small.

Nor can the Secretary's inaction be based on evaluations of the FDA's competence to regulate certified raw milk. If the FDA is able to competently regulate raw milk sales, there is no reason why it is not equally able to competently regulate the very limited certified raw milk sales.

The Secretary has not advanced any specific competing policy which outweighs its primary responsibility to protect the public health and welfare and makes regulation of raw milk sales impossible. Assertions of counsel made in litigation memoranda that this Court should review the Secretary's decision under a more deferential standard,

without any supporting justifications for deference, are not sufficient to overcome the strong presumption of reviewability of agency action under section 10(a) of the APA. There has been no "clear showing that pragmatic considerations [make] judicial review inappropriate." *Bargmann v. Helms,* 715 F.2d 638, 640 (D.C.Cir.1983) (citations omitted).

In review of a decision not to enact a rule, there "is the additional concern that ... unless the agency has carefully focused its considerations, judicial review will have an undesirably abstract and hypothetical quality." *NRDC* at 1046–47. The *NRDC* court explained that in a case where "the agency has in fact held extensive rulemaking proceedings narrowly focused on the particular rules at issue, and has explained in detail its reasons for not adopting those rules, ... the questions posed will be amenable to at least a minimal level of judicial scrutiny. *Id.; accord National Black Media Coalition v. FCC,* 589 F.2d 578 (D.C.Cir.1978); *Action for Children's Television v. FCC,* 564 F.2d 458 (D.C.Cir. 1977).

This case, like NRDC, is one in which there were formal rulemaking proceedings in 1973, followed by 12 years of agency information gathering with regard to those rules, a public hearing on the matter in 1984, and the compilation of a full administrative record, all pertaining to the exact matter about which plaintiffs' petitioned HHS. It is unlikely that the issues involved or the proposed rule could become any more focused. Thus, there is no abstract or hypothetical quality about this Court's review of the Secretary's inaction.

The detail of explanation given by the Secretary in her reasons for refusing to promulgate a rule banning certified raw milk sales is rather brief and conclusory. That does not, however, indicate that the decision is any less amenable to judicial review, but rather that the Secretary lacked a reasoned basis for that decision.

■ Having determined that the Secretary's decision not to promulgate a rule is reviewable under the arbitrary and capri-

cious standard, we must consider whether that decision was in fact arbitrary and capricious. An agency's decision is arbitrary and capricious

if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfr. Ass'n. v. State Farm Mutual Automobile Ins.. Co.,* 463 U.S. 29, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). In this case the Secretary has indeed offered an explanation for her decision that runs counter to the voluminous evidence to the contrary she had before her.

The crux of the Secretary's explanation for her decision to deny plaintiff's petition is that since a greater amount of raw milk is marketed and consumed locally, rather than shipped interstate, and most illness occurs within the producing locality, the problem is one more appropriately dealt with at the state level. The Secretary claims that interstate sales of certified raw milk are "negligible". There is evidence that most raw milk is produced and consumed locally (mainly in California and Georgia) consistent with state law that permits the sale of unpasteurized milk. The record also shows that there is a serious risk of illness resulting from the consumption of that raw milk which does travel across state lines. The risk is not at all diminished merely because the amount of milk which is sold outside of the producing state is smaller than that sold intrastate. The Secretary failed to recognize that although the relative amount of raw milk that is shipped interstate may be small, the chance of out-of-state residents becoming seriously ill from drinking raw milk remains quite high.

Federal regulation is warranted regardless of the absolute volume of certified raw milk sold interstate. Residents of non-producing states near the producing states do

not have access to, and are not represented in, the producing state's political process. A resident of Nevada, for example, who is at risk of becoming ill from the consumption of certified raw milk produced in California and sold in Nevada, cannot turn to a California Congressperson for recourse through the political process. It is precisely in this sort of situation, where a decision made at a local level affects unrepresented persons outside of the locality, that a higher level of government is needed to intervene to protect the interests of the unrepresented parties. While an interstate ban on all raw milk might not solve the problem the producing state faces if intrastate sales are permitted, the residents of the producing state are able to turn to the local political process for redress.

The Secretary's reason for her decision has no rational connection to the undisputed facts in the record.[11] As such, her decision cannot be upheld. *See State Farm.* Nothing in the record supports a conclusion that state regulation would be superior to federal regulation. Evidence in the record clearly reflects that the states have been unsuccessful in their individual attempts to regulate the sale of raw milk. The individual states do not have the authority to prohibit sales of raw milk beyond their own boundaries. Only the federal government, under its commerce clause power, may institute a nationwide ban. Even in light of the deferential review this Court must perform, in this case, the action of the Secretary was clearly arbitrary and capricious and must be reversed.

█ A remand to the agency for further proceedings would serve no purpose and would only add to the delay already encountered. HHS has spent over thirteen years studying the matter and gathering evidence and a hearing has been held. It is undisputed that all types of raw milk are unsafe for human consumption and pose a significant health risk. The appropriate remedy in this case, therefore, is an order compelling the agency to promulgate a regulation prohibiting the interstate sale of certified raw milk and certified raw milk products, and non-certified raw milk and raw milk products.

" 'Administrative rulemaking does not ordinarily comprehend any rights in private

parties to compel an agency to institute such proceedings or promulgate rules' ". *WWHT, Inc. v. FCC,* 656 F.2d 807, 818 (D.C.Cir.1981) (citations omitted). In rare and compelling circumstances, however, the courts have acted to overturn an agency judgment not to institute rulemaking proceedings. *Id.* The limited rule which emerges from those cases is that "an agency may be forced by a reviewing court to institute rulemaking proceedings if a significant factual predicate of a prior decision on the subject (either to promulgate or not to promulgate specific rules) has been removed." *Id.*

The extremely rare circumstances the *Arkansas* and *WWHT* courts referred to, which were necessary before rulemaking would be compelled, are present here. Over thirteen years ago, the Secretary recognized the hazard of raw milk consumption and formally regulated its sale in interstate commerce. That action was partially stayed, so that the Secretary could determine, through a public hearing, the factual issue of whether certified raw milk was safe to consume.

As the evidence accumulated over those thirteen years, and the results of that hearing have conclusively shown, and as the Secretary now concedes, certified raw milk is unsafe. There is no longer any question of fact as to whether the consumption of raw milk is unsafe. The factual predicate to the Secretary's lifting the 1973 stay has indisputably been removed.

Public Citizen asks this Court to compel the agency to promulgate a rule banning both interstate and intrastate sales of raw milk. While we must agree that a rule banning the interstate sale of raw milk is appropriate, at this time there is no indication that a rule banning the intrastate sale of raw milk is necessary to effectuate the interstate ban. Accordingly, the Court declines to order the promulgation of a rule banning intrastate sales of raw milk. Assuming the interstate ban is effective without an intrastate ban, it is up to the individual states to decide on such matters of purely local concern. Should it appear that the interstate sale of raw milk continues, it is within HHS's authority at that time to institute an intrastate ban as well. An Order consistent with this Memorandum Opinion will be entered this date.

---

11. Post hoc rationalizations of counsel, such as those made in this case in Defendant's Memorandum in Support of Motion for Summary Judgment, have traditionally been found to be an inadequate basis for review of an agency's decision. *Burlington Truck Lines v. United States,* 371 U.S. 156, 168–69, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962).

## ORDER

Upon consideration of the parties' cross-motions for summary judgment, supporting and opposing memoranda, and the entire record, it is this 31st day of December, 1986,

ORDERED that plaintiffs' motion for summary judgment be granted; it is further

ORDERED that defendant's motion for summary judgment be denied; and it is further

ORDERED that Food and Drug Administration promulgate, and the Secretary of the Department of Health and Human Services approve a rule banning the interstate sale of all raw milk and all raw milk products, both certified and non-certified, based on the now completed rulemaking proceedings and consistent with the opinion herein.

## AMENDED JUDGMENT

Upon consideration of the Government's motion to amend the judgment entered by this Court on December 31, 1986, it is, this 10th day of February, 1987,

ORDERED that the third paragraph of the Order be amended to read as follows:

ORDERED that the Food and Drug Administration and the Secretary of Health and Human Services publish in the *Federal Register,* a proposed rule banning the interstate sale of all raw milk and raw milk products, both certified and non-certified, pursuant to the provisions of 5 U.S.C. § 553 and complete all rulemaking proceedings in accordance with this Court's opinion within ninety (90) days of the date of this Order.

## AMENDED ORDER

Upon consideration of defendant's motion to amend the order entered in this action on February 10, 1987, supporting and opposing memoranda, and the entire record, it is this 11th day of March, 1987,

ORDERED that defendant's motion be granted so that defendants have a total of 180 days from February 10, 1987, to promulgate a final rule in accordance with this Court's memorandum opinion in this case. No further extensions will be granted.