GEORGIA AQUARIUM, INC., Plaintiff,

v.

Penny PRITZKER, in her Official Capacity as Secretary of Commerce, National Oceanic and Atmospheric Administration, and National Marine Fisheries Service, Defendants,

Animal Welfare Institute, Whale And Dolphin Conservation, Whale And Dolphin Conservation, Inc. (North America), Cetacean Society International, and Earth Island Institute, Intervenor–Defendants.

Civil Action No. 1:13–CV–3241–AT.

United States District Court,
N.D. Georgia,
Atlanta Division.

Signed Dec. 16, 2014.

George John Mannina, Jr., Ashley J. Remillard, Nossaman, LLP; Daniel Francis Diffley (argued), Meaghan Goodwin Boyd, Alston & Bird, LLP, for Plaintiff.

Ethan Carson Eddy (argued), Clifford Eugene Stevens, Jr., U.S. Department of Justice; Lisa D. Cooper, Lori M. Beranek, U.S. Attorney's Office, Northern District of Georgia, for Defendants.

Tyler Joseph Sniff (argued), Donald D.J. Stack, Stack & Associates, P.C., for Intervenor–Defendants Animal Welfare Institute, Whale and Dolphin Conservation, Whale and Dolphin Conservation, Inc. (North America), Earth Island Institute, Inc., and Cetacean Society International, Inc.

### ORDER

AMY TOTENBERG, District Judge.

This administrative appeal filed by Georgia Aquarium, Inc. ("Georgia Aquarium") seeking judicial review of the denial of a marine mammal import permit pursuant to the Administrative Procedures Act ("APA"), is before the Court on Georgia Aquarium's Motion to Supplement the Administrative Record [Doc. 29]. For the

reasons set forth below, the Court **DE-NIES** Georgia Aquarium's Motion.

## I. BACKGROUND

On June 15, 2012 Georgia Aquarium submitted an application to the National Marine Fisheries Service ("NMFS") under the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. § 1361 *et seq.*, for a permit to import 18 beluga whales from Russia for public display. After an extensive review and comment period, NMFS denied Georgia Aquarium's permit application on August 5, 2013. On September 30, 2013, Georgia Aquarium filed this administrative appeal, asserting that NMFS's permit denial was arbitrary, capricious, and not in accordance with the law.

## II. DISCUSSION

■ Georgia Aquarium seeks to add two categories of documents to the administrative record for consideration on its appeal: (1) certain documents withheld by NMFS under the deliberative process privilege and (2) three Russian studies of beluga whale population estimates that are referenced in other documents contained in the record and that were issued in 1986, 1987 and 1988. An administrative record may be "supplemented" in one of two ways, "either by (1) including evidence that should have been properly a part of the administrative record but was excluded by the agency, or (2) adding extrajudicial evidence that was not initially before the agency but the party believes should nonetheless be included in the administrative record." *Am. Petroleum Tankers Parent, LLC v. United States,* 952 F.Supp.2d 252, 261 (D.D.C.2013); *WildEarth Guardians v. Salazar,* 670 F.Supp.2d 1, 5 n. 4 (D.D.C. 2009).

■ As the Supreme Court stated in *Camp v. Pitts,* "the focal point for judicial review of an administrative agency's action should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *see also Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), *abrogated on other grounds by Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) (stating that the APA requires the Court to review "the full administrative record that was before the [agency] at the time [it] made [its] decision."); *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Engineers ("PEACH"),* 87 F.3d 1242, 1246 (11th Cir.1996). The reviewing court's task under the APA "is to apply the appropriate ... standard of review ... to the agency decision based on the record the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985); *PEACH,* 87 F.3d at 1246. As "[t]he reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry," the district court decides, on the basis of the record the agency provides, whether the action passes muster under the APA. *PEACH,* 87 F.3d at 1246 (quoting *Lorion,* 470 U.S. at 744, 105 S.Ct. 1598).

■ "[A]bsent clear evidence, an agency is entitled to a strong presumption of regularity, that it properly designated the administrative record." *Am. Petroleum,* 952 F.Supp.2d at 260–61 (quoting *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs,* 448 F.Supp.2d 1, 5 (D.D.C.2006)). "[W]hile certain circumstances may justify going beyond the administrative record, a court

conducting a judicial review is not 'generally empowered' to do so." *PEACH*, 87 F.3d at 1246 (finding nothing that would necessitate expanding the court's review beyond the administrative record). "Supplementation of the administrative record is the exception, not the rule." *Pac. Shores*, 448 F.Supp.2d at 5 (quoting *Motor & Equip. Mfrs. Ass'n, Inc. v. EPA*, 627 F.2d 1095, 1105 (D.C.Cir.1979)). An agency, however, "may not skew the record by excluding unfavorable information but must produce the full record that was before the agency at the time the decision was made." *Blue Ocean Inst. v. Gutierrez*, 503 F.Supp.2d 366, 369 (D.D.C.2007).[1]

While the Eleventh Circuit has yet to specify what circumstances may justify going beyond the record, it has noted exceptions recognized by other circuits. *See PEACH*, 87 F.3d at 1246, n. 1 (citing *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436–37 (9th Cir.1988)). The D.C. Circuit recognizes at least four "accepted exceptions," permitting supplementation on a showing that the agency: (1) acted in bad faith in reaching its decision, i.e. an illegal motive; (2) engaged in improper behavior in reaching its decision; (3) failed to examine all relevant factors; or (4) failed to adequately explain its grounds for decision. *IMS, P.C. v. Alvarez*, 129 F.3d 618, 624 (D.C.Cir.1997).

## A. Deliberative Process Privilege

Georgia Aquarium asserts that NMFS improperly invoked the deliberative process privilege over certain documents in the record for two principal reasons. First, Georgia Aquarium contends that NMFS cannot rely on the deliberative process privilege when a challenge to the agency's decision making is the central issue in the litigation. Second, Georgia Aquarium asserts that the need for accurate fact-finding outweighs NMFS's interest in non-disclosure of deliberative process communications.[2]

■■■■■ "Judicial review of agency action should be based on an agency's stated justifications, not the predecisional process that led up to the final, articulated decision." *Ad Hoc Metals Coal. v. Whitman*, 227 F.Supp.2d 134, 143 (D.D.C.2002) (citing *PLMRS Narrowband Corp. v. FCC*, 182 F.3d 995, 1001 (D.C.Cir.1999), *LO Shippers Action Committee v. Interstate Commerce Commission*, 857 F.2d 802, 805–06 (D.C.Cir.1988), and *Kansas State Network, Inc. v. Fed. Communications Comm'n*, 720 F.2d 185, 191 (D.C.Cir. 1983)). The deliberative process privilege protects the internal deliberations of an agency in order to "safeguard the quality of agency decisions." *Nadler v. U.S. Dep't of Justice*, 955 F.2d 1479, 1490 (11th Cir. 1992), abrogated *on other grounds by U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151, 95 S.Ct. 1504, 44 L.Ed.2d 29

---

**1.** Thus, as the court in *Am. Petroleum Tankers Parent, LLC v. United States* recognized,

> The agency may not exclude information from the record simply because it did not "rely" on the excluded information in its final decision. *Maritel, Inc. v. Collins*, 422 F.Supp.2d 188, 196 (D.D.C.2006). Rather, "a complete administrative record should include all materials that might have influenced the agency's decision[.]" *Amfac Resorts [LLC v. U.S. Dep't of Interior]*, 143

F.Supp.2d [7] at 12 [(D.D.C.2001)] (citations omitted).

*Am. Petroleum*, 952 F.Supp.2d at 261.

**2.** As Georgia Aquarium has failed to cite any applicable legal authority for the proposition, the Court rejects Georgia Aquarium's argument that NMFS has waived its right to assert the deliberative process privilege by virtue of its purported "selective invocation" of the privilege.

(1975)); *Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1277 (11th Cir.2004) ("The purpose of this privilege is to allow agencies to freely explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny [and] to ensure that agencies are not forced to operate in a fish bowl.")

As Judge Friedman in the district court for the District of Columbia aptly explained:

> To require the inclusion in an agency record of documents reflecting internal agency deliberations could hinder candid and creative exchanges regarding proposed decisions and alternatives, which might, because of the chilling effect on open discussion within agencies, lead to an overall decrease in the quality of decisions. *See San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n*, 751 F.2d 1287, 1326 (D.C.Cir. 1984); *cf. Jordan v. United States Dept. of Justice*, 591 F.2d 753, 772 (D.C.Cir. 1978) (internal agency communications protected from disclosure under Freedom of Information Act to "protect[ ] creative debate and candid consideration of alternatives within agency."). Inclusion of such internal discussion also might cause confusion in the public sphere if everyone had access to internal discussions before agency issues were settled. *See Jordan v. United States Dept. of Justice*, 591 F.2d at 772. By maintaining the confidentiality of predecisional internal opinions and discussions, the policy of non-disclosure "protect[s] the integrity of the decisionmaking process" and ensures that agency actions are judged based on what was decided, not on what was considered. *Id.*

*Ad Hoc Metals Coal. v. Whitman*, 227 F.Supp.2d at 143.

Two requirements must be met before the government may properly withhold a document from disclosure pursuant to the deliberative process privilege: (1) the document must be prepared prior to a final decision "in order to assist an agency decisionmaker in arriving at his decision;" and (2) the document must be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Id.* at 1490–91 (citing *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975) and *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C.Cir.1975)). Thus, in order to be protected by the privilege, the material must be both predecisional and deliberative. *See id.; see also Am. Petroleum*, 952 F.Supp.2d at 265. A document is predecisional "if it was generated before the adoption of an agency policy and deliberative if it reflects the give-and-take of the consultative process." *Am. Petroleum*, 952 F.Supp.2d at 265; *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 151 (D.C.Cir.2006) (citation omitted). Documents such as " 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency,' are considered deliberative." *Am. Petroleum*, 952 F.Supp.2d at 265–66; *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980). "The purpose of the privilege for predecisional deliberations is to ensure that a decisionmaker will receive the unimpeded advice of his associates." *Florida House of Representatives v. U.S. Dep't of Commerce*, 961 F.2d 941, 947–48 (11th Cir.1992) (citing *Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 99 S.Ct.

2800, 61 L.Ed.2d 587 (1979)). The parties do not appear to dispute that each of the documents designated by NMFS on its privilege log meet these criteria.

■ Additionally, "purely factual material that does not reflect the agency's deliberative process generally is not protected;" however, when material is so inextricably connected to the deliberative material that its disclosure would reveal the agency's decision making processes or would be impossible to segregate from the deliberative material in a meaningful way, it may properly be withheld. *Id.* (citing *Local 3, International Brotherhood of Electrical Workers v. NLRB,* 845 F.2d 1177, 1180 (2d Cir.1988) (declining to compel disclosure where stripping documents "down to their bare-bone facts would render them ... nonsensical") and *Ryan v. Department of Justice,* 617 F.2d 781, 791 (D.C.Cir.1980) (requiring disclosure of facts only if they "do not reveal the deliberative process and are not intertwined with the policymaking process")).

Georgia Aquarium's assertion that "[c]ourts routinely deny the assertion of the deliberative process privilege by the government when the very issue in the case is a challenge to the government's decision making," mischaracterizes the scope of the privilege in the context of challenges under the APA. (*See* Mot. at 4.) Every case brought pursuant to the APA challenging an agency action involves a direct challenge to the agency's decision making. *See* 5 U.S.C. § 706 (providing scope of review for challenges to unlawful and arbitrary and capricious agency action). If Georgia Aquarium were correct, there would be no deliberative process privilege available to agencies subject to judicial review under the APA. All but one of the cases cited by Georgia Aquarium in which courts found that the plaintiff's causes of action were directed at the government's *intent* are therefore inapposite.[3] *See In re Subpoena Duces Tecum Served on Office of Comptroller of Currency ("In re Subpoena Duces Tecum"),* 145 F.3d 1422 (D.C.Cir.) *on reh'g in part,* 156 F.3d 1279 (D.C.Cir.1998) (holding that deliberative process privilege could not be asserted in fraudulent transfer action against FDIC since case turned on government's intent as an essential element of the claim); *Alabama Educ. Ass'n v. Bentley,* No. CV–11–S–761–NE, 2013 WL 124306, at *16 (N.D.Ala. Jan. 3, 2013) (holding that where claim asserted against government and officials was one of retaliation under the First Amendment, the deliberative process privilege could not apply because "the Constitution ... makes the nature of governmental officials' deliberations *the* issue" in the action and the plaintiffs are entitled to explore evidence indicating the government intended to punish plaintiffs for their political speech when it enacted legislation); *Jones v. City of Coll. Park, Ga.,* 237

---

**3.** The district court's decision in *New York v. Salazar* appears to be an outlier in its determination that, "[t]he central theme of many of plaintiffs' claims is that the deliberative process itself was fatally flawed and infected by arbitrary conduct and abuse of discretion, thereby depriving them of due process. In light of these allegations, the deliberative process privilege cannot serve as an impermeable shield preventing plaintiffs from obtaining proof of their claims; instead, the privilege must be considered to have dissipated." *New York v. Salazar,* 701 F.Supp.2d 224, 237–38 (N.D.N.Y.2010) aff'd, 6:08–CV–644 LEK/DEP, 2011 WL 1938232 (N.D.N.Y. Mar. 8, 2011). *Salazar* is inconsistent with the focus of the other courts discussed above on whether the action challenges the subjective motivation of the government. This Court therefore declines to follow the district court's approach in *Salazar.*

F.R.D. 517, 521 (N.D.Ga.2006) (in city employee's race discrimination claim, court concluded that deliberative process "is simply inapplicable, because government intent is at the heart of the issue in this case. Plaintiff must prove intentional discrimination by the government in order to recover. Plaintiff therefore has a compelling interest in discovery of evidence of such intent. This interest must be balanced against the governmental interest in non-disclosure, and when this balance is struck, the Plaintiff's interest prevails").

Moreover, Georgia Aquarium's reliance on *In re Subpoena Duces Tecum,* which demonstrates the fault in its own argument, is misplaced. On appeal of that case, the D.C. Circuit held that:

> When a party challenges agency action as arbitrary and capricious the reasonableness of the agency's action is judged in accordance with its stated reasons. Agency deliberations not part of the record are deemed immaterial. That is because the actual subjective motivation of agency decisionmakers is immaterial as a matter of law—unless there is a showing of bad faith or improper behavior.

*In re Subpoena Duces Tecum,* 156 F.3d 1279, 1279–80 (D.C.Cir.1998) (citations omitted); *see also State of Delaware Dep't of Natural Res. & Envtl. Control v. U.S. Army Corp of Engineers,* 722 F.Supp.2d 535, 545–46 (D.Del.2010) ("Documents tending to show the Corps' 'mindset' or its understanding of the permitting obligations with respect to the Deepening Project do not facilitate this inquiry, which is unconcerned with the actual subjective motivation of the agency.... As the deliberative materials bear no relevance to the court's role in reviewing the merits of this case under the APA, the court finds no reason to abrogate the Corps' privilege."). Indeed, the Supreme Court has stated, "there must be a strong showing of bad faith or improper behavior before [inquiry into the mental processes of the administrative decisionmaker] may be made." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971). Georgia Aquarium has made no such showing in this case to justify supplementing the Administrative Record with documents covered by the deliberative process privilege.

▬▬▬ Georgia Aquarium has merely implied that because a draft document appears to show that NMFS may have initially been inclined to approve the permit request, its subsequent decision to deny the permit is suspect. However, the fact that NMFS changed its mind is something that, as long as the proper procedures were followed, it was fully entitled to do. *See Nat'l Ass'n of Home Builders v. Defenders of Wildlife,* 551 U.S. 644, 658–59, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007). "The federal courts ordinarily are empowered to review only an agency's final action, *see* 5 U.S.C. § 704, and the fact that a preliminary determination by a local agency representative is later overruled at a higher level within the agency does not render the decisionmaking process arbitrary and capricious." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife,* 551 U.S. 644, 658–59, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007).

Contrary to Georgia Aquarium's argument that information in the Administrative Record does not explain the basis for NMFS's reversal of its position with respect to the permit approval, NMFS points to the August 5, 2013 timeline memo (at AR9001) as containing the agency's explanation for its change in viewpoint as to

whether the permit should be granted. As counsel for NMFS noted at the hearing on this motion, the Agency's change in course arose after the assumptions provided by Georgia Aquarium in its permit application regarding the beluga whale populations began to fall apart. The Court cannot therefore find that NMFS's decision to deny the permit due to deficiencies noted in Georgia Aquarium's estimations constitutes bad faith.

"There may be cases where a court is warranted in examining the deliberative proceedings of the agency. But such cases must be the rare exception if agencies are to engage in uninhibited and frank discussions during their deliberations." *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26, 45 (D.C.Cir.1986). The Court agrees with Defendants that the documents which Georgia Aquarium seeks to have included in the Administrative Record are at the core of what the deliberate process privilege seeks to protect. (*See* Privilege Log.)[4] Georgia Aquarium has failed to point to any factual material it contends was withheld from the record on the basis of the deliberate process privilege, and NMFS has affirmatively asserted that it did not withhold any such factual information under the guise of the privilege.

Accordingly, the Court **DENIES** Georgia Aquarium's Motion to Supplement the Administrative Record [Doc. 29] with the documents withheld by NMFS on the basis of the deliberative process privilege.

---

4. In the D.C. Circuit, materials protected by the deliberative process privilege are not part of the administrative record and the agency need not provide a privilege log of the documents withheld pursuant to the privilege. *See Am. Petroleum*, 952 F.Supp.2d at 265 (citing cases).

## B. Russian Whale Studies

■ Georgia Aquarium criticizes NMFS's failure to include three Russian studies in the Administrative Record and its inclusion of summaries of the conclusions of these studies. NMFS counters that Georgia Aquarium did not submit copies of the three Russian studies with its permit application. Georgia Aquarium did, however, submit copies of the summaries of these studies which were included by NMFS in the Administrative Record. According to NMFS, Georgia Aquarium is effectively seeking to amend its application through supplementation of the Administrative Record with studies Georgia Aquarium now argues demonstrate that its own prior estimations regarding beluga whale populations were incorrect. (*See* Fed. Defs' Br. at 3–11.)

■ The burden rests with Georgia Aquarium to establish by clear evidence that NMFS has failed to properly designate the Administrative Record. *Georgia River Network v. U.S. Army Corps of Engineers*, 4:10–CV–267, 2012 WL 930325 (S.D.Ga. Mar. 19, 2012) *aff'd*, 517 Fed. Appx. 699 (11th Cir.2013) (citing *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir.1993)). Georgia Aquarium asserts that the Administrative Record can properly be supplemented with the Russian whale studies because they are referenced in other studies included in the Administrative Record and considered by NMFS.[5] As NMFS points out, "[a]n administrative record cannot be said to 'incorporate by refer-

---

5. Georgia Aquarium also asserts that two of the recognized exceptions allowing supplementation of the Administrative Record are applicable here: (1) to explain and evaluate technical matters; and (2) to determine if Defendants considered all the relevant evidence and factors. However, it fails to effec-

ence' every article cited in another article in the record ... Such a rule would create an endlessly expanding record and include voluminous material never actually considered by the agency." (Resp. at 10.) Thus, "merely arguing 'consideration through citation [and reference]' will not suffice because that 'argument stretches the chain of indirect causation to its breaking point' and it fails to give appropriate deference to the agency's designation of the record." *Georgia River Network*, 2012 WL 930325, at *5 (S.D.Ga. Mar. 19, 2012) *aff'd*, 517 Fed.Appx. 699 (11th Cir.2013) (citing *W. Watersheds Project v. Bureau of Land Mgmt.*, 2012 WL 13937, at *1 (D.Nev. Jan. 4, 2012) (quoting *Ctr. for Native Ecosystems v. Salazar*, 711 F.Supp.2d 1267, 1277 (D.Colo.2010))).

Moreover, as Intervenors and NMFS pointed out at the hearing on Georgia Aquarium's motion, various versions and translations of these Russian studies appear to be floating around and no official published translation that has been peer reviewed exists.[6] Intervenors and NMFS were able to find differing versions with portions of the text completely missing from the documents. Thus, the Court is not even sure what version should be in-cluded in the record even if the Court were inclined to allow supplementation. Additionally, the age of the data contained in the Russian studies is sufficiently dated that the Court would require expert evaluation of the data to assess its validity and relevance. Thus, admission of these Russian studies would require the Court to directly assume the scientific evaluative role performed by NMFS, even though Georgia Aquarium failed to directly submit these studies for the Agency's consideration. The Court under these totality of circumstances will not jump into such unchartered waters.

Accordingly, the Court **DENIES** Georgia Aquarium's Motion to Supplement the Administrative Record [Doc. 29] with the three Russian whale studies.

---

tively argue how these exceptions apply in this case.

6. Georgia Aquarium provided no meaningful evidence that showed otherwise.